UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAISA MEDINA,

Plaintiff,

- against -

ABF FREIGHT SYSTEM, INC., ARCBEST CORPORATION, and SCOTT ARMOUR,

Defendants.

25-CV-9393 (DEH) (RWL)

**REPORT AND RECOMMENDATION TO HON. DALE E. HO:**
**MOTION TO DISMISS (DKT. 21)**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Raisa Medina ("Medina") brings the present action against Defendants ABF Freight System, Inc. ("ABF Freight"), ArcBest Corporation ("ArcBest"), and Scott Armour ("Armour") (collectively, "Defendants"). The operative First Amended Complaint ("FAC" or "Amended Complaint") advances claims of racial discrimination and hostile work environment, failure to reasonably accommodate disability, and retaliation, all in violation of the New York State Human Rights Law, NY Exec. Law § 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, NYC Admin. Code § 8-101 *et seq.* ("NYCHRL"). Defendants now move to dismiss the Amended Complaint on two principal grounds: (1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)"), and (2) failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons discussed below, the motion should be GRANTED, and the Amended Complaint should be DISMISSED due to improper group pleading, lack of personal jurisdiction over Armour and ArcBest, and failure to state a claim against any Defendant.

## FACTUAL BACKGROUND[1]

Medina is a Hispanic woman. (FAC ¶ 15.) In July 2022, Medina, a resident of New York, was hired to work as a Manager Trainee for the "Defendant." (FAC ¶¶ 2, 20.) At the time she was hired, Medina was supposed to participate in 18-22 weeks of training, after which she would become a manager. (FAC ¶ 25.) Medina was interviewed for the position by a man named Nelson Soto ("Soto") who, during the interview, asked Medina if she was in a romantic relationship with Fernando Malave ("Malave"), a truck driver. (FAC ¶¶ 26-27.) Medina denied the relationship, as it was "none of Soto's business"; however, unbeknownst to Medina, Malave had already told Soto about Malave's relationship with Medina. (FAC ¶¶ 28-29.) Soto hired Medina for the Manager Trainee position. (FAC ¶ 32.)

On the first day of work, the shop steward "loudly announced" that Medina was Malave's girlfriend. (FAC ¶ 33.) Although Medina was initially "treated in a friendly manner," her work environment quickly deteriorated. (FAC ¶¶ 34, 36.) For example, Elizabeth Hogan, who was supposed to train Medina, said "I am not training that Bitch," forcing Medina to teach herself the role. (FAC ¶¶ 35, 39.) Medina also began hearing racist comments in the workplace, such as colleagues referring to Black and dark-skinned people as "stupid" and "fuckups." (FAC ¶¶ 41-42.) These comments were often made in front of, and by, Medina's supervisors, including Soto, "Robert" and "Dave." (FAC ¶¶ 43-44.) One of Medina's co-workers "ma[de] it known that she hates Koreans[,] Chinese and Jewish people," and other employees "openly talk[ed] about the need to deport Black and

[1] The facts are drawn from the First Amended Complaint, filed on January 7, 2026, at Dkt. 18.

Hispanic people and regularly refer[red] to minorities as 'these people' and 'Trump is right' related to racist sentiments." (FAC ¶¶ 47, 58-59.)

Medina objected to these comments as racist, and was "further ostracized." (FAC ¶ 60.) Soto told Medina that "no one wants to train you" and "everyone is blocking you." (FAC ¶ 63.) Medina informed multiple people about the derogatory comments, including individuals named Colon and Aaron. (FAC ¶¶ 68-69.) No remedial action was taken; instead, Medina was informed that her lack of training was her fault, because "no one wants to work with you." (FAC ¶ 70.) At one point, Medina was told that she was not allowed to be in a relationship with Malave, although other employees, specifically white employees, "are allowed to date [each other] without interference." (FAC ¶¶ 72-77.)

Medina was eventually told that she must transfer to a Connecticut facility "due to the relationship with Malave." (FAC ¶ 80.) Medina was the only employee forced to transfer due to a relationship. (FAC ¶ 81.) The new transfer location required Medina to commute more than an hour and a half every day. (FAC ¶ 84.) Medina, who "suffered from a physical impairment affecting her back," experienced exacerbated back issues due to the new commute, which "materially worsened" her symptoms. (FAC ¶¶ 85-87.) Medina informed "Defendants – through management" – that the transfer made her back worse, and that she could not continue the new commute. (FAC ¶ 88.) Medina asked for a transfer to the Brooklyn facility, where there were at least three openings. (FAC ¶¶ 89-90.) "Defendants" denied her request without engaging her in any dialogue regarding alternative assignments or accommodations. (FAC ¶¶ 90, 93.)

As a result of the ongoing negative treatment Medina experienced at work, as well as the lack of any reasonable accommodations for her back pain, Medina resigned on

September 19, 2022. (FAC ¶ 100.) In the weeks prior to her resignation, Medina had been "repeatedly told that she should resign despite her desire to continue working." (FAC ¶ 111.) Since her resignation, Medina has "remained out of work." (FAC ¶ 104.)

**PROCEDURAL BACKGROUND**

Medina initiated the action on June 26, 2025, in New York State Supreme Court, Bronx County. (Dkt. 1-1.) On November 10, 2025, Defendants removed the case to federal court based on diversity jurisdiction. (Dkt. 1.) On November 28, 2025, Defendants requested a pre-motion conference and submitted a letter outlining their bases for filing a motion to dismiss, including Medina's (1) failure to establish subject matter jurisdiction; (2) failure to establish personal jurisdiction over any Defendant; (3) failure to state a claim for employment discrimination; and (4) failure to state a claim for retaliation. (Dkt. 13.) On December 4, 2025, the Court issued an order setting a timeline for Medina to file an amended complaint. (Dkt. 14.) In that order, the Court advised Medina that the amended pleading should account for all issues raised by Defendants' letter and that Medina would not receive another opportunity to amend to address those issues. (*Id.* at 1.)

On January 7, 2026, Medina filed the Amended Complaint. (Dkt. 18.) The Amended Complaint alleges nine causes of action: race discrimination and hostile work environment in violation of the NYCHRL and NYSHRL (Counts I, II, III, VII, VIII); retaliation in violation of the NYCHRL and NYSHRL (Counts IV, V, IX); and failure to provide reasonable accommodations and engage in cooperative dialog in violation of the NYCHRL (Count VI).

On February 9, 2026, Defendants filed a motion to dismiss, accompanied by a supporting memorandum of law ("Mem."). (Dkts. 21-22.) Defendants argue that the

Amended Complaint should be dismissed for lack of personal jurisdiction, impermissible group pleading, and failure to state a claim. On February 23, 2026, Medina filed her opposition to the motion ("Opp."). (Dkt. 23.) Defendants replied ("Reply"). (Dkt. 24.) The motion has been referred to the undersigned for a Report and Recommendation. (Dkt. 9.)

## LEGAL STANDARDS

The Court sets forth the rules governing impermissible group pleading under Federal Rule of Civil Procedure 8(a), motions to dismiss for personal jurisdiction under Rule 12(b)(2), and motions to dismiss for failure to state a claim under Rule 12(b)(6).

### A. Rule 8(a) And The Prohibition On Group Pleading

"It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." *Monterey Bay Military Housing, LLC v. Ambac Assurance Corp.*, 531 F. Supp.3d 673, 728 (S.D.N.Y. 2021) (quoting C*anon U.S.A., Inc. v. F & E Trading LLC*, No. 2:15-CV-6015, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017)); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard"); *S.G. v. Bank of China Ltd.*, No. 23-CV-2866, 2024 WL 1861158, at *2 (S.D.N.Y. Apr. 29, 2024) ("Where, as here, a complaint lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct, it fails to satisfy this minimum [Rule 8(a)] standard" (internal quotation marks omitted)), *aff'd sub nom. S.G. v. Bank of China U.S.A.*, No. 24-1426, 2024 WL 4891390 (2d Cir. Nov. 26, 2024).

Such "group pleading" violates Federal Rule of Civil Procedure Rule 8(a), which "at a minimum … requires that each defendant be given fair notice of what the plaintiff's

claim is and the ground upon which it rests." *Ortiz v. Consolidated Edison Co. of New York, Inc.*, 801 F. Supp.3d 260, 293 (S.D.N.Y. 2025) (internal quotation marks omitted); *see also Holmes v. Allstate Corp.*, No. 11-CV-1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it"), *R&R adopted*, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012); *TheECheck.com, LLC v. NEMC Financial Services Group Inc.*, No. 16-CV-8722, 2017 WL 2627912, at *2 (S.D.N.Y. June 16, 2017) ("Because the Complaint does not adequately allege facts about the conduct of any individual defendant, its claims against them are dismissed").

**B. Motions To Dismiss Pursuant To Rule 12(b)(2)**

When served with a Rule 12(b)(2) motion to dismiss, "[t]he plaintiff bears the burden of establishing that the court has jurisdiction over the [relevant] defendant[s]." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *see also Universal Trading & Investment Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 54 (2d Cir. 2014) (summary order) ("Plaintiffs bear the burden of establishing that a court has jurisdiction over a defendant"). To carry that burden, "a plaintiff must make a prima facie showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)); *see also Whitaker*, 261 F.3d at 208 ("A plaintiff may carry this burden by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction" (internal quotation marks omitted)). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Dennis v. JPMorgan*

*Chase & Co.*, 343 F. Supp.3d 122, 196-97 (S.D.N.Y. 2018) (quoting *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 81 (2d Cir. 2018)).

In evaluating whether a plaintiff has cleared this bar, the Court may consider the allegations in the plaintiff's complaint, along with affidavits and supporting materials, construing such materials "in the light most favorable to plaintiffs" and "resolving all doubts in their favor." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). Plaintiffs "must make allegations establishing jurisdiction with some factual specificity and cannot establish jurisdiction through conclusory assertions alone." *Continental Industries Group, Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (internal quotation marks omitted). Courts "need not … accept a legally conclusory assertion or draw argumentative inferences." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp.2d 736, 757 (S.D.N.Y. 2004) (internal quotation marks omitted); *see also In re SSA Bonds Antitrust Litigation*, 420 F. Supp.3d 219, 229 (S.D.N.Y. 2019) ("On a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

For non-New York domiciliaries, like Defendants, "[t]here are two ways that New York exercises personal jurisdiction …: general jurisdiction pursuant to N.Y. C.P.L.R. § 301 or specific jurisdiction pursuant to N.Y. C.P.L.R. § 302." *Thackurdeen v. Duke University*, 130 F. Supp.3d 792, 798 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016) (summary order); *see generally Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358 (2021) ("recognizing two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked)

jurisdiction"). "General jurisdiction ... permits a court to adjudicate any cause of action against the ... defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id.* Once a plaintiff establishes personal jurisdiction under the applicable New York statute, it must then show that exercising personal jurisdiction over the defendant aligns with the requirements of constitutional due process principles. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

**C. Motions To Dismiss Pursuant To Rule 12(b)(6)**

Under Federal Rule Of Civil Procedure 12(b)(6), a pleading may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014). However, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[R]ather, the complaint's factual allegations must be enough to raise a right to relief

above the speculative level … i.e., enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and brackets omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

**DISCUSSION**

The Amended Complaint generally lumps together the three Defendants and violates the requirement that a complaint provide each defendant fair notice of the specific claim(s) against them. For the same reason, and additionally because the Amended Complaint's allegations are conclusory and vague, the Amended Complaint fails to establish a basis for personal jurisdiction over Armour or ArcBest. Nor does the Amended Complaint state a claim for relief against any Defendant. As a result, the Amended Complaint should be dismissed.

**A. The Amended Complaint Engages In Improper Group Pleading**

The Amended Complaint violates the group pleading rule by failing to meaningfully distinguish between the named Defendants. The Amended Complaint therefore does not provide each Defendant with "fair notice" of Medina's claims against them in violation of Rule 8(a).

When discussing "Defendants" in relation to Medina's allegations of discriminatory conduct, the Amended Complaint refers to them as "Defendant" or "Defendants," without any way for the Court, or the Defendants, to determine who is being accused of what. (*See, e.g.*, FAC ¶¶ 23, 49-50, 62, 64, 88, 90, 93-96, 100, 102-103, 107-109, 112-125.) For instance, the Amended Complaint alleges that "[a]t all times the Defendants knew of and failed to correct the unlawful conduct described herein." (FAC ¶ 50.) As another

example, Medina says she "informed Defendants – through management – that the forced transfer and resulting commute was aggravating her back impairment." (FAC ¶ 88.) That is exactly the type of group pleading that deprives each defendant of fair notice of the claims against them and violates Rule 8(a). *E.g.*, *Plusgrade L.P. v. Endava Inc.*, No. 1:21-CV-1530, 2023 WL 2402879, at *4 (S.D.N.Y. Mar. 8, 2023) ("[M]ost of the allegations ambiguously state that the alleged misconduct was carried out by 'defendants,' or by numerous defendants placed into makeshift groups …. [T]his method prevents each defendant from being put on notice of the misconduct for which it is being accused").

Although the Amended Complaint does attach individual names to some instances of alleged discriminatory conduct, none of those persons are parties to this lawsuit. For example, while the Amended Complaint alleges discriminatory acts by individual supervisors, no specific acts are alleged to have been committed, or known, by Armour, the only named individual Defendant. (*See, e.g.*, FAC ¶ 44 ("The supervisors who witnessed and participate[d] in the racially offensive comments include, Nelson Soto, Robert and Dave").) Indeed, the Amended Complaint is notable for the variety of names it invokes, none of which are Armour. Such names include Nelson Soto, Fernando Malave, Elizabeth Hogan, "Thomas," "Feliciano," "Colon," "Aaron," "Robert," "Dave," and "Joanna." The omission is all the more peculiar inasmuch as the inoperative original complaint did expressly refer to Armour in connection with particular events. (*See*, *e.g.*, Dkt. 1-1 ¶¶ 71-73, 76, 80, 82-84.) *See Catahan v. Eco Community Cleaners Inc.*, No. 20-CV-1749, 2024 WL 3972720, at *2 (S.D.N.Y. July 26, 2024) (stating that "an amended complaint renders a prior complaint inoperative"), *R&R adopted*, 2024 WL 3965890

(S.D.N.Y. Aug. 27, 2024); *Muhammad v. Trustees of Columbia University*, No. 24-CV-7852, 2025 WL 2781383, at *1 n.1 (S.D.N.Y. Sept. 30, 2025) (same). In other instances, the Amended Complaint refers to "supervisors" generally but without any reference to Armour. (*See, e.g.*, FAC ¶ 45 ("The supervisors find the derogatory comments on race funny and regularly laugh at the comments which create[s] a hostile work environment for Plaintiff").) The Amended Complaint thus fails to provide Armour with fair notice of the claims against him.

The Amended Complaint's group pleading deficiency extends to its treatment of ABF Freight and ArcBest. The Amended Complaint alleges that ABF Freight employed Medina. (FAC ¶ 16.) The FAC's sole allegation specifically naming ArcBest is different; it asserts not that ArcBest employed Medina, but instead that ArcBest "exercised control" over Medina's employment, absent any facts to support that conclusory assertion. (FAC ¶ 17.) The Amended Complaint makes no further distinction between the two companies; nowhere specifies the relationship, if any, between the two companies; and lumps both companies together, along with Armour, as either "Defendant" singular or "Defendants" plural. Even if there is a relationship of some sort between ABF Freight and ArcBest, "that separate legal entities might share a corporate affiliation does not alter the requirement of pleading in a manner that provides fair notice to each defendant of the claims against it." *Nesbeth v. New York City Management LLC*, No. 17-CV-8650, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019).

Medina argues that "[i]n employment discrimination cases, the pleading burden is 'minimal,' and a plaintiff need only provide fair notice of the claim and its grounds." (Opp. at 5 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).) Medina is correct

that an "employment discrimination plaintiff must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Peterec-Tolino v. Commercial Electrical Contractors, Inc.*, No. 08-CV-891, 2009 WL 2591527, at *2 (S.D.N.Y. Aug. 19, 2009) (internal quotation marks omitted). By engaging in group pleading, however, Medina fails to provide "fair notice" to any of the named Defendants. The Amended Complaint therefore should be dismissed pursuant to Rule 8(a). *See, e.g.*, *Atuahene*, 10 F. App'x at 34 (affirming dismissal due to group pleading); *Bank of China*, 2024 WL 1861158, at *2 (dismissing complaint that lumped defendants together and thereby violated Rule 8(a)); *TheECheck.com, LLC*, 2017 WL 2627912, at *2 (dismissing claims pursuant to Rule 8(a) that failed to allege facts specific to each defendant).

**B. The Amended Complaint Does Not Establish Personal Jurisdiction Over Armour Or ArcBest**

The Amended Complaint alleges that the "Court has personal jurisdiction over all Defendants" under both N.Y. C.P.L.R. §§ 301 and 302, because "[a]t all relevant times, Defendants conducted substantial and continuous business activities within the State of New York, including operating terminals, employing workers, and supervising employees within New York." (FAC ¶¶ 6-7, 10.) The Amended Complaint, however, establishes neither general jurisdiction under Section 301 nor specific jurisdiction under Section 302.

**1. No General Jurisdiction Over Any Of The Defendants**

While the Amended Complaint alleges both general and specific jurisdiction, Medina's opposition does not address general jurisdiction under § 301, and instead addresses only specific jurisdiction under § 302(a)(1). Accordingly, the Court may deem Medina to have abandoned her assertion of general jurisdiction. *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp.3d 313, 318 n.1 (S.D.N.Y. 2018) ("At the motion to

dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim"); *see also Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) ("when a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned" (internal quotation marks and brackets omitted)).

The absence of any attempt to defend the allegation of general jurisdiction is not surprising given that the Amended Complaint does not allege that either corporate entity is incorporated in New York or has its primary place of business in New York. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction" (internal quotation marks and brackets omitted)); *Brown*, 814 F.3d at 629 ("when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to" a basis for general jurisdiction). Likewise, the Amended Complaint does not include any allegations demonstrating any systematic contacts between Armour and New York. Accordingly, the Amended Complaint does not demonstrate general jurisdiction over any Defendant.

**2. Specific Jurisdiction Over ABF Freight**

Medina argues that the Court has specific personal jurisdiction over Defendants pursuant to Section 302(a)(1). (Opp. at 3-5.) Although Section 302(a) includes multiple means of obtaining specific jurisdiction over a defendant, Plaintiff invokes only Section 302(a)(1). (*See, e.g.*, *id.* at 4 ("Plaintiff's claims arise directly from that New York employment relationship, establishing CPLR 302(a)(1) jurisdiction").)

Section 302(a)(1) provides for personal jurisdiction over a non-domiciliary "who in person or through an agent … transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). Transacting business has been defined as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Best Van Lines*, 490 F.3d at 246. Section 302(a)(1) is a single-act statute, meaning that "proof of one transaction ... in New York is sufficient to invoke long-arm jurisdiction, even though the defendant never enters New York." *Id*. at 248 (internal brackets omitted) (quoting *Deutsche Bank v. Montana Board of Investments*, 7 N.Y.3d 65, 71, 818 N.Y.S.2d 164 (2006)).

The second element for personal jurisdiction under Section 302(a)(1) requires an "articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.* at 246. "A connection that is merely coincidental is insufficient to support jurisdiction." *Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (internal quotation marks omitted). Further, "[t]o allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant." *In re Aegean Marine Petroleum Network, Inc. Securities Litigation*, 529 F. Supp.3d 111, 135 (S.D.N.Y. 2021); *see also Caplan v. Dollinger*, 803 F. Supp.3d

219, 233 (S.D.N.Y. 2025) (same); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp.3d 379, 396 (S.D.N.Y. 2021) (same). Accordingly, the Court evaluates each Defendant individually.

Despite its impermissible group pleading, the Amended Complaint plausibly alleges personal jurisdiction over ABF Freight. The Amended Complaint alleges that ABF Freight "is a foreign corporation that conducted business in New York, employed Plaintiff in New York, and whose discriminatory and retaliatory acts were purposefully directed at Plaintiff's New York-based employment." (FAC ¶ 16.) The allegation that ABF Freight employed Medina in New York satisfies the "transacted business" element of Section 301(a)(2). *See Vodopia v. Koninklijke Philips Electronics, N.V.*, 398 F. App'x 659, 661 (2d Cir. 2010) (finding specific jurisdiction over foreign employer corporation because complaint alleged that the suit arose from the corporation's transaction of business within the state – "specifically, its employment of plaintiff"), *abrogated on other grounds by Nielsen v. AECOM Technologies Corp.*, 762 F.3d 214 (2d Cir. 2014); *Bloomfield v. Alvest (USA), Inc.*, No. 23-CV-5090, 2025 WL 888476, at *4 (E.D.N.Y. Mar. 21, 2025) ("In employment cases, court[s] have found that out-of-state defendants transact business in New York when they repeatedly execute managerial responsibilities in New York or in communication with employees in New York"); *Manning v. Erhardt + Leimer, Inc.*, No. 17-CV-348, 2020 WL 759656, at *7 (W.D.N.Y. Feb. 7, 2020) ("In the context of an action between an employee and his employer, the plaintiff's employment within the forum state is sufficient to show that the defendant employer transacted business within that state").

The Amended Complaint also satisfies the statute's nexus requirement. *See Tolessa v. New York City Human Resources Administration (HRA)*, No. 05-CV-9492, 2007 WL 3231974, at *5 (S.D.N.Y. Nov. 1, 2007) ("A claim of discrimination on any

forbidden basis must be linked to some sort of action relating to plaintiff's employment"). Unlike federal discrimination law under Title VII, NYCHRL (and NYSHRL) is a strict liability statute that "makes an employer liable for the discriminatory conduct of its employee without regard to the knowledge or conduct of the employer." *Johnston v. Apple Inc.*, No. 11-CV-3321, 2011 WL 4916305, at *5 (S.D.N.Y. Oct. 14, 2011); *see also Rosas v. Balter Sales Co. Inc.*, No. 12-CV-6557, 2018 WL 3199253, at *5 n.5 (S.D.N.Y. June 29, 2018) ("the NYSHRL and the NYCHRL impose strict liability on an employer for the unlawful discriminatory acts committed by a manager or supervisor").

The Amended Complaint alleges multiple discriminatory comments and actions made or witnessed by ABF Freight supervisors while Medina was employed by ABF Freight in New York (*e.g.*, FAC ¶ 43 ("The comments are common place in the office and often made in front of, and by, supervisors"); and, thereby plausibly establishes the requisite nexus between Medina's employment by ABF Freight and her claim for employment discrimination. The Amended Complaint thus sufficiently alleges personal jurisdiction over ABF Freight pursuant to Section 302(a)(1).[2]

Having determined that long-arm jurisdiction may be exercised over ABF Freight pursuant to C.P.L.R. § 302(a)(1), the Court must consider whether the exercise of that

[2] Defendants argue that "ABF Freight is not subject to personal jurisdiction in New York simply because Plaintiff alleges that she is a New York resident," citing *Lear v. Royal Caribbean Cruises Ltd.*, No. 1:20-CV-4660, 2021 WL 1299489, at *6 (S.D.N.Y. Apr. 7, 2021). (Reply at 2.) That argument overlooks that the Amended Complaint does more than just allege that Medina is a New York resident; instead, it alleges that she was employed by ABF Freight in New York and that her discrimination claims arise from that employment. Moreover, *Lear* is inapt. There, the court found no jurisdiction under Section 302(a)(1) because, although the defendant corporation had hired a New York resident, the position was for "employment outside of the State" and the defendant company ultimately opted to not move forward with the plaintiff's employment. *Id.* at *6-7. *Lear* thus presented a far different factual scenario than that at issue here.

jurisdiction comports with due process. That inquiry "consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Licci*, 673 F.3d at 60.

The minimum contacts inquiry considers "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id*. What matters are the "quality and nature" of the defendant's contacts. *Best Van Lines*, 490 F.3d at 242 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The inquiry "focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted). The ultimate question is whether the defendant "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws such that the defendant should reasonably anticipate being haled into court there." *Best Van Lines*, 490 F.3d at 242 (internal quotation marks, citations, and brackets omitted) (quoting *Burger King*, 471 U.S. at 474-75).

"The 'reasonableness' inquiry [considers] whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (internal quotation marks omitted). In making that assessment, the Court considers several factors including: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social

policies." *In re Platinum and Palladium Antitrust Litigation*, 61 F.4th 242, 273 (2d Cir. 2023).

The exercise of jurisdiction over ABF Freight comports with due process. The Amended Complaint alleges that ABF Freight employed Medina in New York and that it purposefully directed the discriminatory and retaliatory acts of which Medina complains "at [Medina]'s New York-based employment." (FAC ¶ 16.) The alleged contacts with New York may be narrow, but they are closely related and meet the minimum contacts requirement. By employing Medina in New York in furtherance of its business, and because Medina's claims arise out of that employment, ABF Freight should reasonably anticipate being haled into court in New York to answer its New York employee's employment-related complaint.

Exercise of personal jurisdiction over ABF Freight also is reasonable. Defendants do not identify any undue burden that ABF Freight would endure by facing suit in New York. New York has an interest in adjudicating claims of New York employees asserting claims under New York City and New York State laws. And, it is more convenient to Medina to litigate in New York than to do so out of state. The remaining factors are neutral. Considering all factors together, the Court concludes that exercising personal jurisdiction over ABF Freight comports with due process. As discussed below, however, that does not mean the Amended Complaint asserts a plausible claim for relief against ABF Freight.

**3. No Specific Jurisdiction Over ArcBest Or Armour**

While the Amended Complaint sufficiently establishes a basis for personal jurisdiction over ABF Freight, it fails to do so with respect to ArcBest or Armour. The Amended Complaint alleges that ArcBest "is a foreign corporation that exercised control

over Plaintiff's employment and whose discriminatory and retaliatory conduct was directed at and caused harm to Plaintiff in New York." (FAC ¶ 17.) Notably, the description of ArcBest, unlike that regarding ABF Freight, omits any allegation that ArcBest conducted any business in New York, whether by employment of Medina or otherwise. Thus, the first required element of Section 302(a)(1) – that the defendant transacted business in New York – is not satisfied. And stating that ArcBest "exercised control" over Medina is vague and conclusory. The Amended Complaint fails to allege any facts demonstrating what leads to that conclusion. Additionally, having failed to sufficiently allege an employment relationship between ArcBest and Medina, the Amended Complaint does not evince a nexus between ArcBest and Medina's claims as required by the second element of Section 302(a)(1). *See Zurich American Life Insurance Co. v. Nagel*, 571 F. Supp.3d 168, 176 (S.D.N.Y. 2021) (rejecting § 302(a)(1) jurisdiction over corporate defendant because plaintiff failed to show that the corporate defendant was actually the plaintiff's employer, not just a related corporate entity).

Likewise, the Amended Complaint does not establish personal jurisdiction over Armour. The Amended Complaint alleges that Armour "is a resident of a state other than New York," and that he "directed supervisory decisions at Plaintiff's New York-based employment, including decisions concerning training, transfer/assignment, and the conditions that led to Plaintiff's constructive discharge, and the resulting harm was felt in New York." (FAC ¶¶ 2, 11.) The allegation that Armour "directed supervisory decisions" is impermissibly conclusory. *See Sarit v. Westside Tomato, Inc.,* No. 18-CV-11524, 2020 WL 1891983, at *6 (S.D.N.Y. Apr. 16, 2020) (finding that "Plaintiff's conclusory allegations about Defendant['s] … 'supervisory control' and the contention that he is 'regularly

engaged' in the business are insufficient to conclude that he is an was an 'employer'" in context of wage-hour-dispute with employee); *Kilkenny v. Greenberg Traurig, LLP*, No. 05-CV-6578, 2006 WL 1096830, at *4 (S.D.N.Y. Apr. 26, 2006) (finding in discrimination case under NYCHRL and NYSHRL that plaintiff's allegations that his alleged employer "directed his work" and was "involved in controlling his employment situation" were impermissibly conclusory (internal brackets omitted)).

When describing specific instances of alleged discriminatory conduct, the Amended Complaint does not name Armour – rather, it references other supervisors who are not parties to this case, and further fails to even establish a specific connection between Armour and those named supervisors.[3] (*See, e.g.*, FAC ¶ 68 (Medina "calls Colon to complain about the hostile work environment, but no remedial actions are taken"); *id.* ¶¶ 69-70 (Medina "then contacts Aaron about the training and discrimination … [and] is informed that the lack of training and the discrimination is Plaintiff's fault").) Medina thus has not demonstrated a nexus between Armour and the alleged wrongful acts, either through Armour's participation in, or awareness of, the discriminatory conduct. *See Trisvan v. Heyman*, 305 F. Supp.3d 381, 394-95 (E.D.N.Y. 2018) (finding no personal jurisdiction over natural person when complaint failed to "provide any non-conclusory allegations of [their] personal involvement"); *Telfair v. Le Pain Quotidien U.S.*, No. 16-CV-5424, 2017 WL 1394384, at *2 (S.D.N.Y. Mar. 8, 2017) (dismissing claims against

[3] "[A]n out-of-state … supervisor subjects himself to the personal jurisdiction of New York courts under N.Y. C.P.L.R. § 302(a)(1) by regularly directing allegedly discriminatory workplace conduct at an employee physically present in New York." *Ruiz v. Credit Agricole Corp. and Investment Bank*, No. 22-CV-10777, 2025 WL 1642406, at *4 (S.D.N.Y. June 10, 2025) (collecting cases).

individual defendant for lack of personal jurisdiction because "[t]he weight of authority holds that the NYSHRL and the NYCHRL impose liability on individuals only where they are 'personally involved' or 'actually participated' in the alleged violations"), *R&R adopted*, 2017 WL 1405754 (S.D.N.Y. Apr. 18, 2017).

In the absence of specific factual allegations regarding ArcBest and Armour's contacts with New York, let alone an established nexus between them and the alleged discriminatory conduct, the Amended Complaint fails to demonstrate that the Court has specific jurisdiction over either of them pursuant to Section 302(a)(1). *See In re Zinc Antitrust Litigation*, 155 F. Supp.3d 337, 384 (S.D.N.Y. 2016) (finding no personal jurisdiction because "Plaintiffs' allegations as to a number of defendants … are sparse to the point of near non-existence or are grouped together with specific allegations relating to their affiliated but legally separate entities").

Medina cites three cases in support of her argument that the Court has personal jurisdiction over each Defendant. First, she cites *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp.3d 498 (S.D.N.Y. 2024) for the proposition that Section 302(a)(1) "is construed broadly, and jurisdiction exists where a defendant purposefully avails itself of conducting activities in New York and the claims arise from those activities." (Opp. at 3.) Those principles are not in dispute. In *Diaz-Roa*, however, the Court found that it did ***not*** have personal jurisdiction over the defendant because, like here, the plaintiff "does not specify any role [defendant] played" in the adverse employment action. *Diaz-Roa*, 757 F. Supp.3d at 526.

Medina's citations to *Winner v. Tryko Partners, LLC*, 333 F. Supp.3d 250 (S.D.N.Y. 2018) and *Williams v. Preeminent Protective Services, Inc.*, 81 F. Supp.3d 265 (E.D.N.Y.

2015) fare no better. (*See* Opp. at 3-4.) In both those cases, unlike here, the plaintiffs alleged specific facts in support of personal jurisdiction pursuant to Section 302(a)(1), either by providing factual "allegations suggest[ing] that Defendant clearly contemplated – and created – a continuing relationship for the provision of marketing services," *Winner*, 333 F. Supp.3d at 260, or by citing to declarations stating defendants' workplace expectations and communications with plaintiff. *See Williams*, 81 F. Supp.3d at 271. There are no similar allegations or declarations here.

Medina further argues that "[t]o the extent Defendants dispute ArcBest's control or Armour's supervisory role, those are factual issues that cannot be resolved on a Rule 12(b)(2) motion …. At most, Defendants' arguments would support jurisdictional discovery – not dismissal." (Opp. at 5.) Yet, on Reply, Defendants state that they "do not contest the accuracy of any factual allegations," but rather "contest … that Plaintiff has alleged facts sufficient to support personal jurisdiction." (Reply at 5.) In any event, the Court has the discretion to deny jurisdictional discovery, and should do so here, "because the plaintiff ha[s] not made out a prima facie case for jurisdiction." *Best Van Lines,* 490 F.3d at 255; *see also Sigma Lithium Corp. v. Gardner*, No. 23-CV-7403, 2025 WL 1268311, at *7 (S.D.N.Y. May 1, 2025) ("A court may grant jurisdictional discovery if a plaintiff identifies a genuine issue of jurisdictional fact, but discovery need not be granted to allow Plaintiff to engage in an unfounded fishing expedition for jurisdictional facts" (internal quotation marks and brackets omitted)); *RSM Production Corp. v. Fridman*, 643 F. Supp.2d 382, 402 (S.D.N.Y. 2009) ("if the plaintiff has failed to establish a prima facie case for personal jurisdiction, jurisdictional discovery is generally not granted"), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

### C. Failure To State A Claim

The Court agrees with Defendants that the Amended Complaint should be dismissed in its entirety for failure to state a claim pursuant to Rule 12(b)(6). As already discussed above, the Amended Complaint's group pleading is itself fatal to stating a cognizable claim for relief. But even putting that deficiency aside, the Amended Complaint fails to state a plausible claim for relief. The Amended Complaint's claims fall into three categories: (1) racial discrimination and hostile work environment; (2) failure to reasonably accommodate disability and to engage in cooperative dialogue; and (3) retaliation.[4] The Court starts with the latter two categories of claims as they are readily disposed of due to abandonment.

#### 1. The Disability And Retaliation Claims Have Been Abandoned

In their moving brief, Defendants explained how the Amended Complaint fails to state plausible claims for relief for either disability discrimination (including both failure to accommodate and to engage in cooperative dialogue) or retaliation. (Mem. at 14-18.) As Defendants aptly observe in reply, Medina's opposition did not engage with Defendants' arguments on those claims, instead remaining silent. (Reply at 6.) Accordingly, the disability and retaliation claims – Counts IV, V, VI, IX – may be deemed abandoned and should be dismissed with prejudice. *See Alterescu v. New York City Department of*

[4] In her opposition, Medina argues that she also has plausibly alleged constructive discharge. (Opp. at 9.) The Amended Complaint does allege constructive discharge, but only as a concomitant adverse employment action to otherwise allegedly improper conduct. (*See* FAC ¶¶ 97-100.) To the extent that Medina means to suggest that her constructive discharge claim is an independent, stand-alone claim, that argument fails for the basic reason that the Amended Complaint does not plead it as such. "It is well settled that a party may not amend its pleadings in its briefing papers." *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp.2d 217, 223 (S.D.N.Y. 2013); *see also Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) (same).

*Education*, No. 21-CV-925, 2022 WL 3646050, at *4 (S.D.N.Y. Aug. 23, 2022) ("Courts within this Circuit routinely dismiss with prejudice claims at the motion to dismiss stage that are not defended and deemed abandoned"); *Felix v. City of New York*, 344 F. Supp.3d 644, 654 (S.D.N.Y. 2018) ("Courts 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed'") (quoting *Arma v. Buyseasons, Inc.*, 591 F. Supp.2d 637, 643 (S.D.N.Y. 2008)); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage ... a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim").

### 2. Racial Discrimination And Hostile Work Environment Claims

Medina claims that, as a Hispanic person, she was subject to racial discrimination and hostile work environment in two primary respects: she was employed within an environment of racially charged comments, and she was subject to discriminatory enforcement of a policy that prohibited her, as a management trainee, from dating a truck driver at the same work location. The allegations of the Amended Complaint do not state a plausible claim for relief under either theory.

"Employment discrimination claims brought pursuant to the NYCHRL [and NYSHRL] require the plaintiff to plausibly allege that [s]he was 'treated less well than other employees because of' a protected characteristic," such as race.[5] *Gehlaut v. New York City Department of Education*, No. 24-CV-1741, 2025 WL 2586770, at *2 (2d Cir.

[5] "The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the NYCHRL's more liberal pleading standard." *Qorrolli v. Metropolitan Dental Associates*, 124 F.4th 115, 122-23 (2d Cir. 2024).

Sept. 8, 2025) (quoting *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). "To state a claim for discrimination [under the NYCHRL], a plaintiff must only show differential treatment of any degree based on a discriminatory motive." *Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) (summary order); *see also Lettieri v. Anti-Defamation League Foundation*, No. 22-CV-9889, 2023 WL 5152447, at *5 (S.D.N.Y. Aug. 10, 2023) ("the plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive"). "[D]iscriminatory motive can be shown either by pleading direct evidence of discrimination, including comments indicating prejudice on account of a protected characteristic, or by pleading facts showing that comparators were treated better than the plaintiff was." *Bautista v. PR Gramercy Square Condominium*, 642 F. Supp.3d 411, 428 (S.D.N.Y. 2022).

As a Hispanic person, Medina is part of a protected class. *See Valentin v. New York State Department of Correctional Services*, No. 07-CV-7066, 2011 WL 13383232, at *7 (S.D.N.Y. Mar. 30, 2011). She nonetheless fails to state a plausible claim for discrimination or hostile work environment based on her membership in that protected class. *See Scalercio-Isenberg v. Morgan Stanley Services Group Inc.*, No. 19-CV-6034, 2019 WL 6916099, at *5 (S.D.N.Y. Dec. 19, 2019) (dismissing NYCHRL claim because Plaintiff "is missing the connective tissue that links her protected status to the alleged" adverse action); *Chambo v. Time Warner Cable, New York City*, No. 11-CV-9555, 2013 WL 7904304, at *9 (S.D.N.Y. Dec. 20, 2013) (explaining that to state a claim, plaintiff "must … show that the challenged conduct occurred because of the plaintiff's membership in a protected class" (internal quotation marks omitted)).

Most of the workplace comments Medina cites as discriminatory and hostile are either in reference to other protected groups (*see, e.g.*, FAC ¶¶ 42, 47, 66), or impermissibly vague (*e.g.*, FAC ¶¶ 41, 51). Indeed, the Amended Complaint makes only one specific reference to comments directed towards Hispanic people. (*See* FAC ¶ 59 ("The employees openly talk about the need to deport Black and Hispanic people and regularly refer to minorities as 'these people' and 'Trump is right' related to racist sentiments").) The Amended Complaint, however, does not attribute those particular comments to anyone in a supervisory or managerial role. That is notable because Medina ***does*** specify supervisors' participation in and/or observation of other remarks targeting non-Hispanic groups. (*See, e.g.*, FAC ¶¶ 44-45.) By failing to attribute the Hispanic comments to a supervisor or manager, or otherwise attributing knowledge of the comments to a supervisor or manager, the Amended Complaint fails to state an actionable claim.[6] *See Holmes v. NYC School Support Services Inc.*, No. 25-CV-1630, 2026 WL 1045421, at *9 (E.D.N.Y. Apr. 17, 2026) ("The NYCHRL does not impose vicarious liability on an employer for an employee's violation of § 8-107(1), unless, inter alia, the employee or agent exercised managerial or supervisory responsibility"); *Lamarr-Arruz v. CVS Pharmacy, Inc.*, 271 F. Supp.3d 646, 655 n.6 (S.D.N.Y. 2017) (rejecting hostile environment claims where plaintiff failed to show, beyond conclusory statements, how "the employer knew [or should have known] of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate and appropriate

[6] Defendants additionally argue that the alleged Hispanic-related comments are not actionable because they are merely stray remarks, which many courts have found insufficient to state a claim for relief. (Mem. at 12.) As there are other bases warranting dismissal, the Court does not rely on the stray-remark principle for its recommendation.

corrective action" (internal quotation marks and citation omitted)); *Rosenfeld v. Hostos Community College*, No. 10-CV-3081, 2013 WL 1285154, at *5 (S.D.N.Y. Mar. 29, 2013) ("Where, as here, allegedly offensive comments are made by a colleague without decision making authority, they are, as a matter of law, not evidence of discrimination"), *aff'd*, 554 F. App'x 72 (2d Cir. 2014).

Medina's second theory, based on discriminatory enforcement of company policy governing in-office dating, also does not pass muster. The Amended Complaint alleges that Medina was "informed that she should not have a relationship with Malave," a truck driver, but that "[w]hite employees are allowed to date without interference." (FAC ¶¶ 72, 74.) The Amended Complaint provides three examples of white couples within the office, but does not identify their positions or functions or any other information sufficient to determine if any of the persons in those couples are appropriate comparators. (FAC ¶¶ 75-77.) "[W]hen plaintiffs rely on disparate treatment allegations to support an inference of discrimination, they must allege a reasonably close resemblance of the facts and circumstances of their case and others similarly situated." *Bhatnagar v. Parsons School of Design at the New School*, No. 20-CV-2321, 2021 WL 2333243, at *4 (S.D.N.Y. June 8, 2021) (internal quotation marks omitted); *see also Salem v. New York University*, No. 22-CV-5112, 2023 WL 8438713, at *7 (S.D.N.Y. Sept. 15, 2023) (finding plaintiff's "assertion that D.S. is a 'similarly situated' comparator remains insufficient to 'support an inference of discrimination'" because he failed to show similar circumstances between the two individuals). The Amended Complaint's conclusory allegation that "Plaintiff is similarly situated to these employees in every material way but is unlawfully targeted due to her race" is entirely conclusory. (FAC ¶ 78.) Having failed to provide any allegations

to show how Medina and white persons in other in-office relationships are similarly situated, the Amended Complaint fails to state a plausible claim of discriminatory application of the company policy.

In short, the Amended Complaint does not assert a plausible claim of race discrimination or hostile work environment. Claims I, II, III, VII, and VIII should therefore be dismissed.

**D. Leave To Amend**

The decision to grant or deny leave to amend is within the trial court's discretion. *Allianz Global Investors GmbH v. Bank of America Corp.*, 473 F. Supp.3d 361, 364 (S.D.N.Y. 2020). Before Medina filed the Amended Complaint, the Court warned her that "[t]he amended pleading should account for all issues raised by Defendants' letter" that previewed arguments for dismissal and that she would "not be given another opportunity to amend to address the issues raised by" the letter. (Dkt. 14 ¶ 2.) Lack of personal jurisdiction and failure to state a claim were among the bases for dismissal previewed by Defendants. (Dkt. 13 at 2.) In attempting to address and expand on allegations to establish personal jurisdiction, the Amended Complaint failed to sufficiently cure those deficiencies, and at the same time exacerbated the group-pleading impropriety. And while the Amended Complaint included additional allegations to bolster the substance of some of Medina's claims, the claims remain deficient. The Court would be well within its discretion to deny Medina a further opportunity to amend.

"The court," however, "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Given that "group pleading may be rectifiable," Medina should be given a second opportunity to amend (except with respect to claims dismissed with prejudice). *Werner v. Equity Residential*, No. 25-CV-6130, 2026 WL 1906272, at *5 n.9 (S.D.N.Y.

June 25, 2026); *accord In re Zinc Antitrust Litigation*, 155 F. Supp.3d at 384-85. In the event Medina does file a second amended complaint (and is able to do so in good faith), she will need to plead factual allegations specific to each Defendant; allegations sufficient to establish personal jurisdiction over each Defendant; and allegations sufficient to sustain her claims of relief. Should she fail to do so, dismissal with prejudice would then be entirely appropriate.

## CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed with leave to amend, except that Medina's abandoned disability and retaliation claims (Counts IV, V, VI, IX) should be dismissed with prejudice. To the extent not addressed above, the Court has considered the parties arguments and finds them to be either moot or without merit.

## PROCEDURES FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Any party shall have fourteen (14) days to file a written response to the other party's objections. Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Dale E. Ho, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007. Any request for an extension of time for filing objections must be addressed to Judge Ho. **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

SO ORDERED.

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: August 18, 2026
New York, New York

Copies transmitted this date to all counsel of record.